IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DANIEL L. BARBARA, SR., *et al.*,

                      Plaintiffs,    OPINION AND ORDER

  v.

                                                              13-cv-83-wmc

SAWYER COUNTY, WISCONSIN, *et al.*,

                      Defendants.

---

Plaintiffs Daniel L. Barbara, Sr., Lee Anne Barbara, and their three minor children, have filed a complaint under 42 U.S.C. § 1983, alleging civil rights violations in connection with a child-custody proceeding in Sawyer County, Wisconsin. Plaintiffs are *pro se*. Although plaintiffs have paid the filing fee for this case, a district court is authorized to conduct limited screening and to dismiss a fee-paid complaint, *sua sponte*, if it appears the allegations are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (citing *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)); *see also Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (holding that "district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee, just as the Court of Appeals may dismiss frivolous matters in like circumstances"). In screening any *pro se* litigant's complaint, the court must construe the claims generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). Even under this liberal standard, however, *sua sponte* dismissal is appropriate where claims lack "legal plausibility necessary to invoke federal subject matter jurisdiction." *Apple*, 183 F.3d at

480.

For reasons set forth below, the complaint here will be dismissed because plaintiffs fail to demonstrate that this court has jurisdiction to consider their claims for relief.

ALLEGATIONS

The lead plaintiffs, Daniel L. Barbara, Sr. (Daniel) and Lee Anne Barbara (Lee Anne), presently reside in Bouse, Arizona, where they were married in 2010. The couple currently have custody of three minor children (M.C.B., S.D.B. and D.L.B.), who are listed as co-plaintiffs.

Plaintiffs seek to sue Sawyer County, Wisconsin, the Sawyer County Board of Supervisors, the Sawyer County Department of Health and Human Services, and Pete Sanders, in his official capacity as "Director of the Sawyer County Department of Health and Human Services at the Sawyer County Courthouse." Plaintiffs also seek to sue two individuals employed by Sawyer County as "child welfare" or social workers (Dave Bauer and Penny Allar) and another employee who works as a domestic violence advocate (Cathy Hewitt). Finally, plaintiffs would sue Daniel's ex-wife, Kristy Osius, her parents (Timothy Lee Osius Sr. and Rucilla Osius), and Kristy's "significant other," Richard Sistrunk.

The dispute stems from a child-custody proceeding in Sawyer County Circuit Court Case Number 2010FA000144, regarding Daniel and Kristy's minor son (G.B.). Plaintiffs allege that Kristy Osius made false accusations of domestic violence and child abuse against both Daniel and Lee Anne at a hearing that occurred on August 17, 2012.

2

Plaintiffs allege that defendants Allar and Hewitt, who also testified at the hearing, conspired with Kristy Osius "to deprive [Daniel] (and all Plaintiffs) of a meaningful relationship with the minor child [G.B.] through the use of malicious, false, and unproven allegations" of domestic abuse. Plaintiffs allege that defendant Allar knowingly and maliciously withheld information regarding the claims of child abuse, citing confidentiality, for the sole purpose of aiding Kristy Osius in her quest to gain sole custody. Although the circuit court "presumably determined that all such allegations of child physical and emotional abuse were unfounded," and ruled that all such testimony be "stricken from the record," plaintiffs nevertheless allege that the false allegations made against Daniel and Lee Anne tainted the entire proceeding with unfairness. As a result of these false accusations and testimony, plaintiffs further maintain that the Sawyer County Circuit Court awarded sole legal custody of G.B. to Kristy Osius following the hearing on August 17, 2012.

By giving false testimony during the hearing on August 17, 2012, plaintiffs also contend that defendants Allar, Hewitt, Kristy Osius and Sistrunk committed "libel, slander and defamation of character" in violation of the plaintiffs' right to due process. Specifically, plaintiffs allege that defendant Hewitt falsely testified that Daniel "is a domestic abuser who abused Defendant [Kristy] Osius for years during the course of their prior marriage." Hewitt also purportedly testified that Daniel conspired to murder Kristy Osius and that "[Barbara] even told [Hewitt] where he was going to hide [Kristy's] body." Plaintiffs allege that defendant Allar failed to conduct an adequate investigation of these domestic abuse claims because he was biased against Daniel on account of his

3

nationality, his race, and his position as Executive Director of the Department of Health and Social Services for the Colorado River Indian Tribes in Arizona.  Plaintiffs also accuse Sawyer County, the Sawyer County Board of Supervisors, the Sawyer County Department of Health and Human Services, and two supervisory officials (Pete Sanders and Dave Bauer) of failing to hire, train or supervise competent social workers.  As a result of these shortcomings, plaintiffs assert that Daniel was denied a fair and unbiased hearing in his child-custody case.

Finally, plaintiffs contend that they have suffered substantial emotional and financial losses as the result of the maliciously false accusations of child abuse that were made during the custody proceeding, including attorneys' fees, court costs, increased child support payments and the loss of a tax deduction. Plaintiffs assert that the false allegations of domestic abuse were "intentionally and maliciously" made to "threaten the reputation, mental and emotional health, and financial solvency of the plaintiffs."

Plaintiffs seek three million dollars in actual and punitive damages for "slander, libel, conspiracy to slander," and violations of the right to due process and equal treatment under the law.  Plaintiffs also seek a permanent injunction that will: (1) enjoin the Sawyer County Department of Health and Social Services from having any further involvement with plaintiffs; (2) enjoin defendants Allar and Hewitt from having any further contact with plaintiffs or plaintiffs' family members, except through counsel or legal process; (3) seal the record in the Sawyer County child-custody proceeding and in any future litigation in that case involving plaintiffs; and (4) enjoin defendants Kristy Osius, Timothy Lee Osius, Sr., Rucilla Osius, and Richard Sistrunk from making

4

"unproven allegations" of domestic violence, emotional abuse, physical abuse, or child abuse against the plaintiffs. In addition, plaintiffs seek a court order directing the Sawyer County Circuit Court to grant a change of venue for any future litigation between plaintiffs and Kristy Osius "regarding child custody and involving the minor child [G.B.]."

OPINION

The complaint in this case -- which primarily involves a claim of defamation of character during the course of a child-custody proceeding -- is fundamentally flawed on a number of levels that prevent its proceeding further. First, the individual defendants "are immune from civil liability for damages caused by false and malicious testimony, if relevant to the issues in the matter where the testimony is given." *Niedert v. Rieger*, 200 F.3d 522, 525 (7th Cir. 1999) (quoting *Bromund v. Holt*, 24 Wis.2d 336, 129 N.W.2d 149, 152 (Wis. 1964)). *See also Bergman v. Hupy*, 64 Wis. 2d 747, 750, 221 N.W.2d 898 (1974) (Statements "pertinent or relevant to the case" that are made in the course of judicial proceedings are absolutely privileged and insulate the speaker from liability); *Lathan v. Journal Co.*, 30 Wis. 2d 146, 151-52, 140 N.W.2d 417 (1966) (noting that even false statements made in judicial proceedings are privileged); *Ladd v. Uecker*, 2010 WI App 28, ¶¶ 13, 15, 323 Wis.2d 798, 780 N.W.2d 216 (same). Absolute immunity applies to insulate witness testimony regardless of whether the testimony was malicious or merely negligent.[1] *See Niedert*, 200 F.3d at 526. Because the defamatory statements

---

[1] The absolute privilege for judicial and quasi-judicial communications exists for the same reason that other judicial immunity does. *See Briscoe v. LaHue*, 460 U.S. 325, 330-36 (1983). Without such immunity, the collection and examination of evidence would be hampered,

outlined in the complaint were pertinent to deciding proper custody, the testifying defendants are protected by this absolute privilege. As a result, plaintiffs cannot state a defamation claim under Wisconsin law. *See Kennedy v. Children's Svc. Society of Wis.*, 17 F.3d 980, 983 (7th Cir. 1994) (observing that one of the elements of defamation in Wisconsin is "that the statement is unprivileged"); *see also Torgerson v. Journal/Sentinel, Inc.*, 210 Wis.2d 524, 534, 563 N.W.2d 472, 477 (1997).

Second, plaintiffs cannot establish a civil rights violation under 42 U.S.C. § 1983 premised upon defamatory statements. To establish liability under § 1983, a civil rights plaintiff must demonstrate that the alleged misconduct (1) was committed under color of state law; and (2) deprived the plaintiff of rights secured by the Constitution or laws of the United States. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *Baker v. McCollan*, 443 U.S. 137, 142 (1979). There is no constitutional right to be free from defamation or slander. *See Paul v. Davis*, 424 U.S. 693, 712 (1976) (while a State may protect against injury to reputation by virtue of its tort law, a person's reputation does not implicate a "liberty" or "property" interest of the sort protected by the Due Process Clause). Thus, while defamation may be actionable under state law, such a claim does not involve the deprivation of any rights, privileges or immunities which are secured by the Constitution or laws of the United States. *See Paul*, 424 U.S. at 701; *Cross v. Fiscus*, 830 F.2d 755, 756-57 (7th Cir. 1987). Absent a constitutional violation, plaintiffs cannot establish municipal liability on the part of Sawyer County, the Sawyer County

---

because lawyers, litigants, witnesses, and judges would be fearful of being sued for defamation on the basis of their submissions, arguments, testimony or rulings. *See Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 707-08 (7th Cir. 1994).

Board of Supervisors, the Sawyer County Department of Health and Human Services, or the supervisory social workers (Pete Sanders and Dave Bauer). *See Monell v. New York City Dep't of Social Svcs.*, 436 U.S. 658, 691-92, 694 (1978); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997).

Third, because the harms alleged flow directly from a state court order awarding child custody of G.B. to Kristy Osius, review of these allegations is constrained by the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *District of Columbia Ct. of App. v. Feldman*, 460 U.S. 462, 486 (1983); *see also Golden v. Helen Sigman & Assoc., Ltd.*, 611 F.3d 356, 361-62 (7th Cir. 2010) (holding that *Rooker-Feldman* barred review of claims related to a state court divorce and child custody proceedings). The *Rooker-Feldman* doctrine prevents a party "complaining of an injury caused by [a] state-court judgment" from seeking redress in a lower federal court. *See Exxon Mobil Corp. v. Saudi Indus. Corp.*, 544 U.S. 280, 291-92 (2005). A litigant may not avoid the *Rooker-Feldman* doctrine merely by casting his complaint in the form of a civil rights action, as plaintiffs are attempting to do. *See Ritter v. Ross*, 992 F.2d 750, 753 (7th Cir. 1993). Rather, litigants who feel that a state court proceeding has violated their constitutional rights must appeal that decision through the state court system and then directly to the United States Supreme Court. *See Young v. Murphy*, 90 F.3d 1225, 1230 (7th Cir. 1990).

At bottom, plaintiffs' allegations invite scrutiny of the state court's decision in the child-custody proceeding and they plainly ask this court to intervene in future custody

decisions concerning the minor child at issue in that case. Because the allegations implicate or are "inextricably intertwined" with that state court judgment, *Rooker-Feldman* bars federal review. *See Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008); *see also Wright v. Tackett*, 39 F.3d 155, 157-58 (7th Cir. 1993) (per curiam) (holding that *Rooker-Feldman* bars review of constitutional claims that are inextricably intertwined with state court divorce proceedings); *Liedel v. Juvenile Court of Madison County*, 891 F.2d 1542 (11th Cir. 1990) (finding that *Rooker-Feldman* and *Younger* abstention doctrine bar federal court jurisdiction over a case involving ongoing child custody dispute, notwithstanding claims of violation of constitutional rights to due process) (citing *Younger v. Harris*, 401 U.S. 37 (1971)).

For all of the foregoing reasons, the complaint must be dismissed.

## ORDER

IT IS ORDERED that the complaint is DISMISSED without prejudice for lack of jurisdiction.

Entered this 8th day of February, 2013.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge